

# NUMBER 13-12-00572-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

VALLEY REGIONAL MEDICAL
CENTER, INC.,                                                    Appellant,

v.

LIDIA GONZALEZ AS NEXT
FRIEND OF SANTIAGO
GUERRERO, A MINOR CHILD,                                        Appellee.

## On appeal from the 444th District Court
## of Cameron County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Chief Justice Valdez**

By two issues, appellant, Valley Regional Medical Center, Inc. ("Valley"),

challenges the denial of its motion to dismiss appellee Lidia Gonzalez's medical liability

claim. In its first issue, Valley contends that the expert reports introduced by Gonzalez

failed to provide an adequate explanation of how Valley's conduct caused the injuries

alleged in appellee's complaint. In its second, related, issue, Valley asserts that the expert reports were required and failed to provide a statement on the foreseeability of the injuries alleged in appellee's complaint. We affirm.

## I. BACKGROUND

A minor child was born prematurely on May 8, 2008 at Valley. The child's mother had been diagnosed with hypertension. The child was diagnosed with hypoglycemia after birth. The staff at Valley ordered that he receive an IV bolus of 10% dextrose in water.

Gonzalez contends that during the first night of the child's life, Valley's staff pumped sugar water into his veins which caused his blood sugar to increase to 2735 mg/dl, almost thirty times the normal level. The child began suffering seizures. A brain topography revealed that the child was suffering from hemorrhages in his brain. Later that night, it was discovered that the child suffered from brain damage. Further tests, performed later that week and in the following months, revealed even greater brain damage. Gonzalez sued the hospital under Texas Civil Practice and Remedies Code section 74.351(a). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2008).

Gonzalez filed her original petition as next of friend of the child on July 15, 2011, asserting a health care liability claim against Valley. To fulfill her requirement under section 74.351, Gonzalez filed three expert reports by Jerry Tomasovic, M.D., Robert Zimmerman, M.D., and Diane Ginsberg, M.S., R.Ph., FASHP. *See Id.* Valley filed objections to Gonzalez's expert reports and motion to dismiss arguing, in relevant part, that they did not explain the "causal relationship between any breach of the standard of care and [the child's] injuries." After a hearing held on April 11, 2012, the trial court

2

issued an order granting Valley's objections but permitting Gonzalez thirty days to produce reports that complied with the statute. *See id.* § 74.351(c) (providing that if "elements of the report are found deficient, the court may grant one thirty-day extension to the claimant in order to cure the deficiency"). Gonzalez submitted a supplemental report of Dr. Tomasovic and an amended report replacing Ginsburg's previous report. Subsequently, Valley filed its second motion to dismiss and objections to appellee's expert reports. On August 29, 2012, the court held a hearing on the motion to dismiss, after which it issued an order overruling Valley's objections to the expert reports and denying its motion to dismiss. Valley now files this interlocutory appeal. *See id.* at § 51.014(a)(9) (West 2011). Valley challenges the expert reports on the basis that they did not, individually or collectively, satisfy the requirements of section 74.351. Gonzalez counters that Valley failed to preserve objection to Ginsberg's report and that the trial court did not abuse its discretion in finding that, under the requirements of the statute, Dr. Tomasovic's report adequately explained causation.

In relevant part, Dr. Tomasovic's original report stated the following:

I have received a neuroradiologic report from Dr. Robert A. Zimmerman from November 2009 . . . . I concur with Dr. Zimmerman's opinion that these findings were consistent with neuroimaging sequlae from hyperglycemia and hypernatromia . . . . Given the past history of hypersomular/hyperglycemic exposure over a prolonged time, [the child] remains at a significant risk for developing a seizure disorder. It is reasonable that the second set of seizure activity occurring beyond the age for onset of febrile seizures and the absence of family history for such disorder places the seizure event to fall within a reasonable medical probability as a sequelae from the hyperglycemia and hyperosmolar exposure during the [indecipherable] time frame. The condition of the infant at birth with subsequent presentation of intraventricular hemorrhage documented in the medical records supported by Dr. Zimmerman's review suggests that this complication is a probable sequelae from the inappropriate administration of a hyperosmolar/hyperglycemic solution in the first days of life.

3

In his supplemental report Dr. Tomasovic stated, in relevant part:

The pathogenisis for neurologic sequelae to include seizures and encephalopathy is felt to represent an increase in tissue lactic acid as a consequence of the iatrogenic administration of hyperosmolar fluids. In addition, the pattern of changes confirmed by Dr. Robert A. Zimmerman of abnormal signal intensity in the posterior cerebral region has been documented previously from alterations in glucose levels. This pattern is seen in both hypoglycemia and hyperglycemia which implicates a distinctive regional vulnerability to that area to increase in tissue lactic acid.

## II.    PRESERVATION

As an initial matter, Gonzalez argues that Valley failed to preserve error for Diane Ginsburg's expert report. She contends that, as a result, Ginsburg's report satisfies all expert report requirements under section 74.351. However, footnote one of Valley's second motion to dismiss and objections to Gonzalez's expert reports[1] states: "Ms. Ginsb[u]rg's initial and supplemental reports offer no opinion on proximate cause. Even if they did, they would be inadequate because as a pharmacist, Ms. Ginsburg is unqualified to opine on proximate cause in a healthcare liability claim." (Citations omitted). We conclude that Valley's written objections to Ginsburg's report preserved error. *See id.* 74.351(b) (requiring a health care provider to raise any objections to expert reports within 21 days after they are served, or any complaints are waived); *see also Renaissance Surgical Ctrs.—South Tex., L.L.P. v. Jimenez*, No. 13-12-00101-CV, 2008 Tex. App. LEXIS 6857, **8–9 (Tex. App.—Corpus Christi, Aug. 28, 2008, no pet.) (mem. op.) (finding that objections in a motion to dismiss preserve error on appeal of the adequacy of expert reports). Accordingly, we must reach the merits of this appeal

---

[1] We note that this motion was titled "Defendant Valley Regional Medical Center's Objections to Plaintiff's Supplemental Expert Report of Jerry Tomasovic, MD., and Motion to Dismiss." Despite the title of the motion, Valley objected to all three expert reports presented by Gonzalez in the motion.

and consider whether the expert report of Dr. Tomasovic provided a fair summary of the causal relationship between Valley's conduct and the alleged injury.

### III.    FORESEEABILITY

We address Valley's second issue first because it establishes the standard for causation which must be explained in the reports; thus, our analysis of the first issue is dependent on our resolution of the second.  Valley argues that, in the present case, the expert reports' failure to include a statement on foreseeability renders them inadequate under the statute.  Valley implores us to reconsider our decision in *Rio Grande Regional Hospital v. Ayala*, No. 13-11-00686-CV, 2012 Tex. App. LEXIS 7175 (Tex. App.—Corpus Christi Aug. 24 2012, pet. filed) (mem. op.) in which we found that an expert report did not have to explain how the breach of standards of care proximately caused the alleged injury and thus did not have to provide a statement on foreseeability.  *See Kingston v. Helm,* 82 S.W.3d 755, 760 (Tex. App.—Corpus Christi 2002, pet. denied) (reasoning that "although considerations of stare decisis normally counsel against overruling an opinion of this court after such a short time, a clearly erroneous decision should be corrected").

Section 74.351 of the Texas Civil Practice and Remedies Code defines an expert report as "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the *causal relationship* between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (emphasis added).

5

In *Ayala* we agreed with the Dallas Court of Appeals in determining that "[a]ppellants cite no authority and we have found none to support their contention that an expert report must opine on whether the specific injuries sustained by the claimant could have been foreseen by the healthcare defendants." *Ayala*, 2012 Tex. App. LEXIS 7175, at *51; *See Adeyemi v. Guerrero*, 329 S.W.3d 241, 246 (Tex. App.—Dallas 2010, no pet.) ("Finally, [defendant] argues that [plaintiff's] expert report is insufficient because it never addresses foreseeability . . . . [Defendant] cites no authority, however, and we have found none, to support her contention that an expert report must opine on whether the specific injuries sustained by the claimant could have been foreseen by the defendant physician.") (internal citations omitted). Valley has cited no authority indicating that our previous opinion was clearly erroneous, and we decline to find so. *See Kingston,* 82 S.W.3d at 760.

Valley claims that our decision in *Ayala* does not comply with *In re Jorden*, which requires us to interpret section 74.351 in accordance with its plain language. *See* 249 S.W.3d 416, 420–22 (Tex. 2008). However, in *Ayala*, we concluded that requiring foreseeability in an expert report imposes a new requirement not contemplated by the statute. *Ayala*, 2012 Tex. App. LEXIS 7175, at *51. Valley then cites cases demonstrating that plaintiffs must show proximate cause at trial to succeed in a health care liability claim. *See Columbia Rio Grande Healthcare, L.P. v. Hawley,* 284 S.W.3d 851, 860 (Tex. 2009); *Grider v. Mike Obrien, P.C.*, 260 S.W.3d 49, 57 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). However, Valley fails to explain how the requirements for proving causation at trial affect the plain meaning of "causal relationship" in the statute. Instead, we will continue to apply our holding in *Ayala* that

an expert report need not contain a statement on foreseeability to be adequate for the claim to survive dismissal. *See Ayala*, 2012 Tex. App. LEXIS 7175, at *51. This holding is consistent with both the plain language of the statute and its intent to limit frivolous claims.[2] There is no mention in the statute of foreseeability or proximate cause, and Texas law does not impose a requirement to establish the elements that must be proved at trial at this stage in the proceedings. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351; *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001) (reasoning that, to avoid dismissal, a plaintiff need not present evidence in the report as if it were actually litigating the merits).

Therefore, we decline to depart from stare decisis and the precedent we established in *Ayala*, and find that the trial court did not abuse its discretion by denying Valley's motion to dismiss for the expert reports' failure to provide a statement on foreseeability. *See Ayala,* 2012 Tex. App. LEXIS 7175, at *51; *see also Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010) (stating that a trial court's denial of a motion to dismiss is reviewed for abuse of discretion); *see also Weiner v. Wasson,* 900 S.W.2d 316, 320 (Tex. 1995) (reasoning that adhering to precedent fosters efficiency, fairness, and legitimacy). We overrule Valley's second issue.

---

[2] Recently, in *Certified EMS, Inc. v. Potts*, the Supreme Court reasoned that the purpose of the expert report requirement is to limit the

> "excessive frequency and severity of . . . claims," but to "do so in a manner that will not unduly restrict a claimant's rights any more than necessary to deal with the crisis." (quoting Act of June 11, 2003, 78th Leg., R.S., ch. 204, § 10.11(b)(1), (3), 2003 Tex. Gen. Laws 847). In accordance with this goal, we have opined that one purpose of the report requirement is to expeditiously weed out claims that have no merit. We have also stated that the purpose of evaluating expert reports is "to deter frivolous claims, not to dispose of claims regardless of their merits." (quoting *Scoresby*, 346 S.W.3d at 554; citing *Loaisiga*, 379 S.W.3d at 258 (recognizing that the expert report "requirements are meant to identify frivolous claims and reduce the expense and time to dispose of any that are filed"); *In re Jorden*, 249 S.W.3d at 421).

*Certified EMS, Inc. v. Potts*,   392  S.W.3d 625, 631 (Tex. 2013).

7

## IV.   ADEQUACY OF EXPERT REPORTS' EXPLANATION OF CAUSATION

Valley claims that the three expert reports did not, individually or collectively, satisfy the requirement to provide a fair summary of the causal relationship between the injury and the breach of the standard of care.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351.  Specifically, it asserts that Dr. Tomasovic, in his report, which it claims was the only report explaining the element of causation, merely "opines that the improper administration of fluid caused Plaintiff's injuries, including an increased risk of seizure disorder and cognitive and language impairment.  But he never explains how and why the former resulted in the latter."[3]  At oral arguments, the attorney for Valley clarified that Dr. Tomasovic's report did not explain how the hospital's improper administration of fluid caused lactic acid build-up and how that increase in lactic acid caused the specific injuries in this case.[4]

---

[3] In its reply brief, Valley argues that the reports contained gaps in its explanation in the following areas:

    i.      How hyperglycemia and hypernatremia caused plaintiffs risks of developing a seizure disorder or cognitive language impairment.

    ii.     How and why seizure activity occurring after age 4 and in the absence of family history for the disorder means that the injuries were caused by hyperglycemia and hypersomolar exposure.

    iii.    The significance of increased lactic acid and how and why this combined with hyposomular exposure and increased lactic acid caused an increased risk of seizures and cognitive and learning impairment.

    iv.    What a regional vulnerability to lactic acid is, how and why it manifested itself as an injury, and how and why it caused an increased risk of seizure disorders and cognitive and language impairment.

    v.     The link between abnormal signal intensity being "documented previously" from alterations in glucose levels and his opinion that an increase in glucose levels in this case caused seizure disorders and cognitive and language impairment.

[4] Valley also argues that the trial court's denial of the motion to dismiss is improper because Gonzalez failed to remedy Dr. Zimmerman's report after Valley's first objections to the expert reports were filed.  However, under section 74.351, Gonzalez may satisfy the requirement by serving any number of different reports from separate experts, which when construed together, are adequate to meet the requirements of the statute.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(i).  Valley only objects to the

## A. Applicable Law

The denial of a motion to dismiss is reviewed for abuse of discretion. *Jelinek*, 328 S.W.3d at 539. To satisfy the requirement of section 74.351, an expert report must provide a fair summary of the expert's opinions as of the date of the report regarding: (1) applicable standards of care; (2) the manner in which the care rendered by the healthcare provider failed to meet the standard of care; and (3) the causal relationship between that failure and the injury, harm, or damages claimed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6).

A report's adequacy does not depend on whether the expert uses any particular "magical words." *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002). The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial. *Palacios*, 46 S.W.3d at 879.

To avoid dismissal, the report must present an objective good faith effort to comply with these requirements. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(i). A "good faith effort" in this context simply means a report that does not contain a material deficiency. *Samlowski v. Wooten*, 332 S.W.3d 404, 409–10 (Tex. 2011). To constitute a good faith effort, the report must provide enough information to: (1) inform the defendant of the specific conduct the plaintiff has called into question; and (2) provide a basis for the trial court to conclude that the claims have merit. *Bowie*, 79 S.W.3d at 53.

At this stage of the proceedings, a plaintiff is not required to present evidence in the report as if it were actually litigating the merits. *Palacios*, 46 S.W.3d at 879. The

---

expert reports' cumulative failure to explain causation. Because we find that Dr. Tomasovic's report is sufficient to explain causation, we find that it is unnecessary to consider the adequacy of Dr. Zimmerman's report.

9

report need not marshal all of the plaintiff's proof, but it must include the expert's opinion on each of the three elements: (1) standard of care; (2) breach; and (3) causal relationship. *Bowie*, 79 S.W.3d at 53. A report cannot merely state the expert's conclusions about these elements. *Id.* "Rather, the expert must explain the basis of his statements to link his conclusions to the facts." *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999). A claimant is not required to satisfy the expert report requirement by serving a single expert report, but may satisfy the requirement by serving any number of different reports from separate experts, which when construed together, are adequate to meet the requirement of providing non-conclusory expert opinions on the elements of (1) standard of care; (2) breach; and (3) causal relationship. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(i).

To demonstrate to the trial court that the complaint has merit, an expert cannot simply opine that the breach caused the injury. *Jelinek*, 328 S.W.3d at 539–40. It thus follows that an expert's conclusion that "in medical probability" one event caused another is generally insufficient to satisfy the statute. *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009) (quoting *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999); *Earle*, 998 S.W.2d at 890) (reasoning that "[a]n expert's simple *ipse dixit* is insufficient to establish a matter"). Instead, the expert must explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented. *See Jelinek*, 328 S.W.3d at 539–40. While, as noted above, no "magical words" need be used to meet the good-faith requirement, mere invocation of the phrase "medical probability" is no guarantee that the report will be found adequate. *See Bowie*, 79 S.W.3d at 53.

10

**B.     Discussion**

Valley cites multiple cases it claims supports its assertion that the type of explanation offered by Tomasovic in his report is too conclusory to be adequate under the statute.

In *Jelinek*, the court found that an expert's explanation that a hospital's failure to provide antibiotics to a patient "within a reasonable medical probability" caused increased pain and suffering and a prolonged hospital stay did "not give the trial court any reasonable basis for concluding that the lawsuit has merit" because the statement provided by the expert was "conclusory on causation." 328 S.W.3d at 539–40. The court reasoned that the expert report "offer[ed] no more than a bare assertion that [the hospital's] breach resulted in increased pain and suffering and a prolonged hospital stay. Beyond that statement, the report offers no explanation of how the breach caused the injury." *Id.* at 540. The *Jelinek* court suggested that the explanation provided by the report is hardly more than an *ipse dixit*. *Id.* at 539–40 (citing *Pollock*, 284 S.W.3d at 818 (quoting *Burrow*, 997 S.W.2d at 235); *Earle*, 998 S.W.2d at 890 (reasoning that "[a]n expert's simple *ipse dixit* is insufficient to establish a matter")).

Valley also cites *Shanoy v. Jean* as a leading case in support of its argument. *Shenoy v. Jean*, No. 01-10-01116-CV, 2011 Tex. App. LEXIS 10212, at *7 (Tex. App.— Houston [1st Dist.] Dec. 29, 2011, no pet.) (mem op.). Notably, this case is from the Houston court of appeals and is unpublished. In *Shanoy*, the plaintiff alleged that a hospital improperly cleared a patient for surgery and that the administration of anesthesia to a patient with that plaintiff's specific medical history caused her to experience respiratory arrest. *Id.* The Houston court reversed the trial court's denial of

11

a motion to dismiss the case holding that while the expert report stated that the administration of anesthesia may have caused respiratory arrest, it did not explain and did not even "state that [the patient's] history of heart problems or other conditions somehow made her more likely to suffer respiratory arrest after premature extubation than a person without those medical conditions." *Id.* at *18. In *Shenoy*, the alleged breach was the hospital clearing the patient with a specific medical history for surgery, and the court held that the report failed to explain how or even state that the patient's medical history caused her injury. *Id.* Notably, while Valley contends that the present case is factually analogous, the court in *Shenoy* did not hold that the expert failed to describe the different biological processes involved in plaintiff's injury.

Under the circumstances in the present case, we find our recent opinion in the *Ayala* case instructive. The appellants in *Ayala* made a similar claim that an expert report was merely "conclusory" in its explanation of how a nurse's conduct caused oxygen deprivation resulting in severe brain damage. *Ayala*, 2012 Tex. App. LEXIS 7175, at *47. The report stated that "the injuries . . . were a direct result of the oxygen deprivation caused by the breaches as set out herein and in [the nurses] expert report." The report continued that "the [] nurse and [hospital] had [not] acted reasonably and prudently as set out in the above standard of care, or as set out in [the nurse's] report." *Id.* at *51. The doctor concluded that that "if the nurse and [hospital] had acted reasonably and prudently as set out in the above standard of care, or as set out in [the nurse's] report, would not have suffered the cardiopulmonary arrest, ischemic brain injury, and neurologic impairment." *Id.* We found in *Ayala* that the doctor's "report exceed[ed] a good faith effort to establish the element of causation, arguably

12

approaching the type of evidence marshalling that is not required at this stage of the proceedings." *Id.* at *52 (citing *Bowie*, 79 S.W.3d at 53).

Here, Dr. Tomasovic's report provided much more than a bare assertion that Valley's conduct caused the alleged injury. *See Jelinek*, 328 S.W.3d at 540. His report explains how and why Valley's administration of fluid caused the injuries to a greater degree than even the report in *Ayala*, which we found "exceeded a good faith effort to establish the element of causation." *Ayala*, 2012 Tex. App. LEXIS 7175, at *52. While we agree with Valley's assertion that expert reports must explain how and why conduct caused injury, we conclude they need not describe all biological processes involved in the onset of the injury. *See Jelinek*, 328 S.W.3d at 540; *Palacios*, 46 S.W.3d at 879; *Bowie*, 79 S.W.3d at 53; *see also Shanoy,* 2011 Tex. App. LEXIS 10212, at *18. Dr. Tomasovic, therefore, did not need to detail the way that lactic acid or abnormal signal intensity allegedly resulting from the hospital's administration of fluids acted or progressed within the child's body to result in seizure disorder and cognitive and language impairment.

Indeed, Dr. Tomasovic's report provided an adequate explanation on causation. He directly stated why the injury occurred, reasoning that the medical reports "suggest[] that this complication is a probable sequelae from the inappropriate administration of a hypersomular/hyperglycemic solution in the first days of life." Therefore, unlike *Shanoy*, Dr. Tomasovic specifically linked Valley's breach to Gonzalez's injuries. *See Shanoy,* 2011 Tex. App. LEXIS 10212, at *18. Furthermore, he provided multiple statements explaining how the alleged injury occurred: "The pathogenesis for neurologic sequelae to include seizures and encephalopathy is felt to represent an increase in tissue lactic

acid as a consequence of the iatrogenic administration of hypersomular fluids." He also explained that "in addition, the pattern of changes confirmed by Dr. Robert A. Zimmerman of abnormal signal intensity in the posterior cerebral region has been documented previously from alterations in glucose levels." Dr. Tomasovic even discussed how the specific facts of the case led him to this conclusion, mentioning the brain hemorrhaging discovered in Dr. Zimmerman's report and the child's medical history. Given the depth and specificity of Dr. Tomasovic's report, we find that he clearly linked the basis of Gonzalez's lawsuit to the facts in this case and hold that the trial court did not abuse its discretion in finding that he provided an adequate explanation of how and why the hospital's conduct caused the child's injury. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351. We overrule Valley's first issue.

## V. CONCLUSION

We affirm the trial court's denial of Valley's motion to dismiss.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
23rd day of May, 2013.

14