Anu F. ADEYEMI, M.D., Appellant,

v.

Diana GUERRERO, Appellee.

No. 05–09–01449–CV.

Court of Appeals of Texas,
Dallas.

Dec. 7, 2010.

Rehearing Overruled Jan. 14, 2011.

David M. Walsh, IV, Chamblee & Ryan, P.C., Dallas, TX, for Appellant.

Paul D. Rich, Law Office of Domingo Garcia, P.C., Dallas, TX, for Appellee.

Before Justices MORRIS, MOSELEY, and MYERS.

## OPINION

Opinion By Justice MORRIS.

This is an interlocutory appeal from the trial court's denial of a motion to dismiss. Anu F. Adeyemi, M.D. contends the trial court abused its discretion in failing to dismiss Diana Guerrero's health care liability claims because her expert reports did not sufficiently address causation and the experts were not qualified to render the opinions given. After reviewing the reports at issue, we conclude the trial court did not err in denying Dr. Adeyemi's motion to dismiss. We affirm the trial court's judgment.

## I.

The reports at issue state that on February 21, 2008, Diana Guerrero was admitted to Dallas Regional Medical Center in active labor. She received an epidural anesthetic and, a short time later, gave birth. The next day, Guerrero complained of a severe headache and vomited. Her medical records show that she was given pain medication and was told by a nurse that the headache was caused by the epidural and a fall she sustained in the bathroom during labor and delivery. Although there was no description of the fall in the labor and delivery notes, Dr. Adeyemi noted the fall in her progress notes, stating that Guerrero complained of a headache after falling in labor and delivery. Dr. Adeyemi ordered further monitoring of Guerrero's headache but did not order any scans or investigate the fall.

The next day, Guerrero continued to complain of headaches. She was given more pain medication and caffeinated drinks and was told to lie flat in bed. On February 24, three days after being admitted, the pain medication ceased to alleviate her headache pain and Guerrero suffered a seizure. Multiple scans were ordered that revealed a right parietal and frontal hematoma. Guerrero was transferred to the intensive care unit at Parkland Memorial Hospital.

At Parkland, Guerrero suffered another hemorrhage in the same location, which resulted in a lesion. Her condition continued to deteriorate with "evidence of probable increased intercranial pressure and worsening cerebral edema." Guerrero underwent open-skull neurological surgery for "decompressive craniectomy and evacuation of the hematoma." After surgery, Guerrero developed left hemiparesis, exhibiting symptoms such as weakness,

numbness, and cognitive deficits. The hemiparesis severely affected her mobility, and her left extremities lost functionality. Guerrero also had difficulty with speaking and swallowing. A bone infection from the craniectomy necessitated a second surgery to repair a skull deformity.

On March 5, 2008, Guerrero was moved to the Inpatient Rehabilitation Unit at Parkland for additional treatments and therapies. She regained some function on her left side but continued to experience weakness and loss of function in her left hand. After one month of inpatient therapy, Guerrero was released with instructions to continue physical, occupational, and speech therapy as an outpatient.

Guerrero filed suit against Dallas Regional Medical Center and others including Dr. Adeyemi. Guerrero asserted that Dr. Adeyemi was negligent in failing to correctly and timely assess, diagnose, and evaluate the cause of her headaches. Guerrero also asserted that Dr. Adeyemi was negligent in failing to order a CT scan or a neurological evaluation after observing and noting telltale signs of a head injury.

Pursuant to section 74.351(a) of the Texas Civil Practice and Remedies Code, Guerrero served expert reports made by Dr. Pedro Nosnik and Nancy Strange, RNC, to support her claims. Dr. Adeyemi objected to Dr. Nosnik's report claiming it failed to show how he was qualified to opine on the standard of care applicable to her. Dr. Adeyemi further objected that the report failed to specify how she breached the standard of care or adequately address the issue of causation. Based on the alleged inadequacy of Dr. Nosnik's expert report, Dr. Adeyemi moved that the claims against her be dismissed with prejudice under section 74.351(b). The trial court overruled Dr. Adeyemi's objections and denied the motion to dismiss. Dr. Adeyemi brought this appeal.

## II.

We review a trial court's ruling on a motion to dismiss for failure to file a sufficient expert report under an abuse of discretion standard. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 877 (Tex.2001). A trial court must grant a motion to dismiss under section 74.351(b) of the civil practice and remedies code only if the expert report does not represent an objective good faith effort to comply with the definition of an expert report set out in section 74.351(r)(6). *See* TEX. CIV. PRAC. & REM.CODE ANN. 74.351(*l*); *see also Palacios,* 46 S.W.3d at 878. The statutory definition requires the expert to provide a "fair summary" of the expert's opinions regarding the applicable standards of care, the manner in which the care rendered failed to meet those standards, and the causal relationship between that failure and the injury, harm, or damages claimed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). The report is meant to serve two purposes: (1) to inform the defendant of the specific conduct the claimant is questioning and (2) to provide a basis for the trial court to conclude the claims have merit. *See Leland v. Brandal,* 257 S.W.3d 204, 206–07 (Tex.2008). Because the statute focuses on what is required in the report, the only information relevant to determining whether a report complies with the statute is within the four corners of the document. *See Palacios,* 46 S.W.3d at 878.

Dr. Adeyemi first contends the trial court erred in denying her motion to dismiss because Dr. Nosnik's report fails to explain causation in a non-conclusory manner. An expert report does not need to contain all of the plaintiff's proof. *See Cook v. Spears,* 275 S.W.3d 577, 585 (Tex.

App.-Dallas 2008, no pet.). But it must do more than merely state the expert's conclusions about the standard of care, breach, and causation. The expert must explain the basis of his statements and link his conclusions to the facts. *Id.*

In this case, Dr. Nosnik's report states that "despite [Guerrero's] repeated complaints of persistent headaches after her fall in the bathroom, and despite the vomiting in conjunction with her persistent headaches after her fall where she struck her head against the floor, no CT scan was timely requested . . . and no effective measures were taken by the nurses and physicians to address her repeated complaints about headaches after the fall." Dr. Nosnik opines that Dr. Adeyemi's conduct fell below the applicable standard of care because she "did not timely order a CT scan (nor any other imaging) to ascertain the root causes of [Guerrero's] headaches" nor "engage any neurological professionals to assist and address her persistent headaches." According to Dr. Nosnik, a CT scan is "particularly effective in detecting bleeding in the brain after head injuries." Dr. Nosnik also notes that "delayed intercranial hematomas are one of the most easily remediable causes of secondary injury if identified early, but can cause significant disability or death if not promptly recognized and treated."

Under the portion of the report entitled "Causation," Dr. Nosnik states that "[a]s a result of the two-day delay in identifying the brain bleed after her fall in the bathroom, the risk of Ms. Guerrero suffering a worsening of [sic] intercranial hematoma was significantly increased." Dr. Nosnik goes on to state that "[b]ased on reasonable medical probability, a CT scan would have detected the initial hemorrhage resulting from her fall in the bathroom . . ." and "because the nurses and physicians at Dallas Regional Medical Center failed to timely detect the lesions and bleeding in her head after her fall in [labor and delivery], she did not receive proper and adequate medical treatment, which in reasonable medical probability increased the chances of her suffering a seizure and sustaining significant neurological damages." Finally, Dr. Nosnik states that, in his opinion, "the breaches of the standard of care by the nurses and physicians (such as Dr. Adeyemi) at the Dallas Regional Medical Center proximately caused Ms. Guerrero's injuries, which included but are not limited to seizure, a right parietal and frontal hematoma, additional brain hemorrhage, left hemiparesis, dysarthia, dysphagia, a host of neurological complications, and subsequent skull deformity due to the emergency need of a craniectomy."

Dr. Nosnik's report sufficiently addresses the element of causation by specifically stating what Dr. Adeyemi should have done and what happened because she failed to do it. *See Moore v. Sutherland,* 107 S.W.3d 786, 791 (Tex.App.-Texarkana 2003, pet. denied). Dr. Nosnik opines that, based on Guerrero's medical history, including her reported fall during labor and delivery, Dr. Adeyemi should have ordered a CT scan or had Guerrero examined by a neurologist. The delay in ordering the scan and evaluating Guerrero significantly increased the chances that Guerrero's condition would worsen, which it did, and proximately caused her injuries. The report ties Dr. Nosnik's opinions on causation to the facts of the case and, therefore, the opinions are not conclusory.

Dr. Adeyemi argues the report is conclusory because it does not allege that her conduct caused Guerrero to suffer the initial brain bleed. It was not necessary, however, for Dr. Adeyemi's actions to cause Guerrero's initial injury. It is sufficient that her failure to properly diagnose

and treat Guerrero's condition caused her ultimate injuries. *See id.*

Dr. Adeyemi next argues that Dr. Nosnik's report fails to explain what would have occurred if the standard of care had been met. In other words, Dr. Adeyemi contends the report does not address causation with respect to how the performance of a CT scan or neurological consultation would have prevented Guerrero's injuries. But the report clearly states that, based on reasonable medical probability, a CT scan would have detected Guerrero's initial hemorrhage and, if identified early, such hematomas are easily remediable. The report further states that delay in such treatment can cause significant disability and that the failure to timely diagnose and treat Guerrero in this case caused her injuries.

■■■ Dr. Adeyemi challenges certain assertions in Dr. Nosnik's report such as whether Guerrero's headaches were, in fact, "persistent" and whether a CT scan would have detected a hematoma smaller than the one eventually discovered three days after Guerrero's fall. Dr. Adeyemi further complains that, because there were other doctors involved in Guerrero's care, Dr. Nosnik improperly lumps all of the physicians together for the purposes of assigning liability. While Dr. Adeyemi may disagree with Dr. Nosnik's characterization of the facts and his conclusions on causation, this does not make the report conclusory. *See Fagadau v. Wenkstern,* 311 S.W.3d 132, 139 (Tex.App.-Dallas 2010, no pet.). Furthermore, the fact that the trier of fact may ultimately reject Dr. Nosnik's opinion regarding causation does not render the report insufficient. *See Hayes v. Carroll,* 314 S.W.3d 494, 507 (Tex.App.-Austin 2010, no pet.). The report sufficiently informs Dr. Adeyemi of the specific conduct Guerrero is questioning and provides a basis for the trial court to conclude

the claims have merit. This is all that is required of an expert report. *See Leland,* 257 S.W.3d at 206–07.

■■■ Finally, Dr. Adeyemi argues that Dr. Nosnik's expert report is insufficient because it never addresses foreseeability. Specifically, Dr. Adeyemi argues that the report does not explain how she could have predicted that Guerrero would suffer the range of injuries that she did from her fall during labor and delivery. Dr. Adeyemi cites no authority, however, and we have found none, to support her contention that an expert report must opine on whether the specific injuries sustained by the claimant could have been foreseen by the defendant physician. A report need only contain a "fair summary" of the expert's opinions. *See Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 51 (Tex.2002). A "fair summary" of the expert's opinion on causation informs the defendant of the specific conduct the expert believes was deficient and what conduct caused the injury. *See Hayes,* 314 S.W.3d at 508. Dr. Nosnik's report does this.

After a careful review of Dr. Nosnik's report, we conclude the trial court did not abuse its discretion in concluding the report sufficiently addressed the issue of causation. We resolve Dr. Adeyemi's first issue against her.

■■■ In her second issue on appeal, Dr. Adeyemi contends that nothing in his report shows that Dr. Nosnik was qualified to testify about the standard of care applicable to her. Dr. Adeyemi practices in the area of obstetrics and gynecology. Dr. Nosnik specializes in the diagnosis and treatment of neurological disorders of the brain, spinal cord, nerves, and muscles. Dr. Adeyemi concedes that a physician need not be a practitioner in the same specialty as the defendant to qualify as an expert in the case. *See id.* at 503. She

argues, however, that Dr. Nosnik did not demonstrate he was qualified to opine on the standard of care to be applied when treating a post-partum patient complaining of headaches. We conclude Dr. Adeyemi's argument impermissibly narrows the scope of qualifications for experts in health care liability claims such a these.

Dr. Nosnik's report and curriculum vitae show that he is a "Diplomate of the American Board of Psychiatry and Neurology (Board Certified in Neurology)" and a "Diplomate American Academy of Pain Management." Dr. Nosnik states in his report that he actively practices neurology "in clinic, hospital, critical care, and emergency room settings treating and evaluating patients similar to Ms. Diana Guerrero presenting with symptoms and conditions such as those she experienced and reported." Dr. Nosnik further states he has "treated hundreds of patients like Ms. Guerrero who developed hematomas as a result of head trauma," and he was "familiar with the standard of care as it relates to physicians who care for patients with injuries and symptoms exhibited by Ms. Guerrero."

Although not every licensed doctor is qualified to testify on every medical question, we must be careful not to draw expert qualifications too narrowly. *See Larson v. Downing*, 197 S.W.3d 303, 305 (Tex.2006); *Broders v. Heise*, 924 S.W.2d 148, 152 (Tex.1996). The central question in determining whether an expert is qualified is whether the expert has "knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject." *See Broders*, 924 S.W.2d at 153. The specific

issue in this case is whether Dr. Adeyemi was negligent in failing to order scans or a consultation with a neurologist when Guerrero complained of persistent headaches and vomiting after falling. Guerrero's claims focus not on her pregnancy but on her head trauma. Dr. Nosnik's report shows he is experienced in treating and evaluating patients such as Guerrero and that he is familiar with the standard of care applicable to physicians who care for patients with the injuries and symptoms she exhibited. We conclude the trial court did not abuse its discretion in finding Dr. Nosnik qualified to state an opinion on the standard of care applicable to a physician treating a patient with the history and symptoms presented by Guerrero. We resolve Dr. Adeyemi's second issue against her.

Based on the foregoing, we affirm the trial court's order denying Dr. Adeyemi's motion to dismiss Guerrero's claims.[1]

---

1. We note that, in her appeal, Dr. Adeyemi also challenged Guerrero's expert report made by Nancy Strange, RNC on the same grounds that she challenged Dr. Nosnik's. Because we have concluded that Dr. Nosnik's report is sufficient, it is unnecessary for us to address Dr. Adeyemi's challenges to Strange's report.