**AFFIRM; and Opinion Filed June 10, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-01380-CV**

**RICARDO CHAVIRA, JR., M.D. AND ROGER WARD BOSWELL, M.D., Appellants**
**V.**
**LEZONIA AND ANTHONY DARDEN, Appellees**

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-10-14947**

## MEMORANDUM OPINION

Before Justices FitzGerald, Murphy,[1] and Lewis
Opinion by Justice Lewis

This is an interlocutory appeal from the trial court's denial of a motion to dismiss. Ricardo Chavira M.D. and Roger Boswell M.D. contend the trial court abused its discretion in failing to dismiss Lezonia and Anthony Darden's health care liability claims because one expert was not qualified to render the opinion given and his report did not sufficiently address the standard of care, breach of the standard of care, or causation; and the other expert report did not sufficiently address causation. After reviewing the reports at issue, we conclude the trial court did not err in denying Drs. Chavira and Boswell's motion to dismiss. We affirm the trial court's order.

---

[1] The Honorable Mary Murphy, Retired Justice, was a member of the panel at the time this case was submitted for decision. Due to her retirement from this Court on June 7, 2013, she did not participate in the decision of the Court.

## I. Background

On September 10, 2008, Lezonia Darden presented to her Primary Care Physician ("PCP") after becoming ill at work. Darden complained of neck and low back pain and involuntary vaginal leakage. The PCP reported Darden's vitals with elevated temperature at 104.8 degrees. The office also noted that Darden presented with "acutely ill appearance w/ rigors," assessed her with an "acute infection," and called for the ambulance transport to Lake Pointe Medical Center in Rowlett, Texas ("Lake Pointe").

Darden was "visited by" Emergency Room physician Dr. Roger Ward Boswell while in the Emergency Department at Lake Pointe. Another Emergency Room physician, Dr. Ricardo Chavira, ordered medication for Darden. Darden tested positive for pregnancy and Chavira ordered a pelvic sonogram, which demonstrated "intrauterine fetal demise of a 17-week-old fetus and Oligohydramnios compatible with previous rupture of membranes." After a radiologist discussed the sonogram findings with Chavira, Darden was transferred to a regular floor. When she reached the regular floor, Darden was complaining of severe pain, nausea, and vomiting for which she received medication.

Her pain persisted and additional medication was administered. Around midnight, Darden experienced heavy vaginal bleeding which continued through the night. At 5:45 a.m., the lab notified a doctor of a dangerously low potassium level. Darden continued to have heavy bleeding and her blood pressure dropped.

Darden was transferred to surgery at 8:20 a.m. the next morning. Upon her arrival in the operating room, she was minimally responsive and the anesthesiologist initiated life-saving measures. After removal of the fetus, resuscitative measures were continued in the operating room for approximately two hours. After surgery, Darden was transferred to ICU, where she remained until September 15, 2008, when she was transported by care-flight to Medical City

Dallas Hospital for additional care and treatment. Darden reportedly has continuing and extensive health issues.

On or about November 23, 2012, the Dardens filed this health care liability action and served two expert reports to comply with the civil practice and remedies code section 74.351. The two expert reports were authored by Board Certified OB/GYN Dr. Donald J. Coney and Board Certified emergency medicine physician Dr. Carl A. Piel, Jr. Appellants timely filed an objection to the reports. The Dardens filed their response to appellants' objections and an alternative motion for a 30-day extension to cure any deficiency. Appellants subsequently filed a motion to dismiss. On June 17, 2011, the trial court heard arguments on the motion to dismiss and granted the Dardens a 30-day extension to cure the deficient reports. On July 18, 2011, the Dardens filed supplemental expert reports. On August 8, 2011, appellants timely filed their objections to the supplemental reports. On October 13, 2011, appellants filed their second motion to dismiss asserting the expert reports were deficient. On October 28, 2011, the trial court conducted a hearing on the motion to dismiss which was ultimately denied. Appellants now appeal the trial court's order denying their second motion to dismiss.

## II. Discussion

### A. Standard of Review

We review a trial court's ruling on a motion to dismiss under chapter 74 for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877–78 (Tex. 2001). As a reviewing court, we may not substitute our judgment for that of the trial court in the resolution of factual issues. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). A trial court shall grant a motion to dismiss under section 74.351(b) of the civil practice and remedies code only if the expert report does not represent an objective good faith

effort to comply with the definition of an expert report set out in section 74.351(r)(6). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West 2011); *see also Palacios*, 46 S.W.3d at 878.

**B. Qualifications**

Appellants first contend that Coney was not qualified to render an opinion as to the standard of care applicable to them. Appellants are emergency room physicians and Coney practices in the area of obstetrics and gynecology.

The qualifications required of an expert offering an expert report against a physician are in relevant part as follows:

> (a) In a suit involving a health care liability claim against a physician for injury to or death of a patient, a person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care only if the person is a physician who:
> > (1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;
> > (2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
> > (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.401 (West 2011). To determine whether a witness is qualified on the basis of training or experience, we consider whether, at the time the claim arose or at the time the testimony is given, the witness is board certified or has other substantial training or experience in an area of medical practice relevant to the claim. *Id*. at § 74.401(c)(1). We also consider whether the witness is actively practicing medicine in rendering medical care services relevant to the claim. *Id*. at § 74.401(c)(2).

Coney's report states he is board certified in obstetrics and gynecology; he is actively practicing; and has "treated thousands of pregnant women." Coney further states, "I have participated in the care of multiple women with same or similar circumstances such as those demonstrated by Mrs. Darden." A medical expert who is not of the same school of medicine is

competent to testify if he has practical knowledge of what is usually and customarily done by a practitioner under circumstances similar to those confronting the defendant. *See Ehrlich v. Miles*, 144 S.W.3d 620, 625 (Tex. App.—Fort Worth 2004, pet. denied); *Marling v. Maillard*, 826 S.W.2d 735, 740 (Tex. App.—Houston [14th Dist.] 1992, no writ). It is required that "the expert has knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject." *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996).

We must be careful not to draw expert qualifications too narrowly. *See Larson v. Downing*, 197 S.W.3d 303, 305 (Tex. 2006); *Broders*, 924 S.W.2d at 152; *Adeyemi v. Guerrero*, 329 S.W.3d 241, 247 (Tex. App–Dallas 2010, no pet.). The specific issue in this case is whether appellants failed to timely and appropriately treat Mrs. Darden's condition upon presentation in the emergency room.

Coney's report includes his curriculum vitae as well as four paragraphs detailing his expertise and qualifications including the following:

> As a board certified OB-GYN actively practicing in Dallas, Texas since July 1969, I have treated thousands of pregnant women and through my association with partner I have participated in the care of additionally thousands of pregnant females. I have participated in the care of multiple women with same or similar circumstances such as those demonstrated by Mrs. Darden. I have knowledge of the accepted standards of care for the diagnosis, care and treatment of patients with conditions that are similar to those presented by Lezonia Mashell Darden.

Coney's report shows he has worked closely with emergency room physicians who have attended his patients prior to his arrival, he is experienced in treating patients such as Darden and he is familiar with the standard of care applicable to physicians who care for patients with the same symptoms and conditions she exhibited. We conclude the trial court did not abuse its discretion in finding Coney had the knowledge, skill, experience, education, or training to render an opinion on the standard of care and causation applicable to a physician treating a patient with

the history and symptoms presented by Darden. *See Livingston v. Montgomery*, 279 S.W.3d 868, 874–77 (Tex. App.—Dallas, 2009, no pet.) (concluding expert report of OB/GYN sufficient to opine standards related to pediatric neurological injuries). We resolve appellants' first issue against them.

## C. Sufficiency of Coney's Expert Report

Appellants next contend Coney's report failed to establish the applicable standard of care, breaches of the applicable standard of care, and causal relationships. An expert report must include "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). "Because the statute focuses on what the report discusses, the only information relevant to the inquiry is within the four corners of the document." *Palacios*, 46 S.W.3d at 878. The expert report must represent a good-faith effort to provide a fair summary of the expert's opinions. *Id*. The report serves two purposes: the report must inform the defendant of the specific conduct the plaintiff has called into question, and the report must provide a basis for the trial court to conclude that the claims have merit. *Id*. at 878–79.

We begin our analysis by examining Coney's report in detail. First we review the opined standard of care. Coney's report states:

> The standards of care that apply *to physicians caring for patients demonstrating same or similar conditions such as those demonstrated in Mrs. Darden's case* are as follows.
> 1. A physician should thoroughly exam [sic] the patient who presents with signs and symptoms such as Mrs. Darden and such exams should, at a minimum, include a pelvic exam.
> 2. An ER physician should promptly seek consultation in a patient who presents with signs and symptoms such as Mrs. Darden.
> 3. A physician should timely recognize the signs and symptoms of a patient with sepsis and/or septic shock. These signs and symptoms include, but are not limited

to, increased temperature, tachycardia, tachypnea, elevated white blood count (WBC) or a normal WBC with greater than 10% immature forms. Signs of septic shock include the above plus findings of multiple organ dysfunction, decreased urinary output (less than 0.5 cc/kg/hour), coagulability abnormalities, elevated creatine level and circulatory failure.

4. A physician should timely diagnose the cause or origin of a patient's sepsis or septic shock.

5. Once a physician has determined the source of the infection, the source should be eliminated as soon as possible. For example, draining an abscess or removing an infected appendix. Failure to eliminate the source of the infection allows progression and worsening of the infective process. In this instance, the source of the infection was the infected products of conception.

6. A physician should recognize the need for high level observation of a septic patient as an inappropriate or untimely treatment of an infective source and can rapidly progress to a life threatening septic shock. When a patient is at risk for septic shock, ICU admission is appropriate.

7. A physician should timely attend, evaluate and treat a patient demonstrating sepsis or septic shock.

(emphasis added.) Coney also stated that he had reviewed Darden's medical records, which indicated her septic miscarriage and septic shock.

Appellants contend that Coney's report does not articulate a standard of care for each of them. They also contend that his statement that, "The standards of care that apply to physicians caring for patients demonstrating same or similar conditions such as those demonstrated in Mrs. Darden's case," does not address either defendant specifically and "is conclusory at best." We disagree. Coney states the standard of care applicable to *any* physician who found themselves presented with a patient in Darden's situation. Both of these physicians participated in treating this condition. *See Romero v. Lieberman*, 232 S.W.3d 385, 391-92 (Tex. App.—Dallas 2007, no pet.) (discussing standard of care applicable to all physicians participating with treatment).

Likewise, Coney's report names the individual physicians and states how the conduct of each fell below the standard of care. Coney's report details the breaches as follows:

Dr. Boswell breached the standards of care in the following ways:
1. Failed to perform a thorough exam of Mrs. Darden, including a pelvic exam.
2. Failed to seek timely consultation in a patient who arrived by ambulance as sent by her family physician and who demonstrated signs of severe illness.

–7–

Dr. Charva [sic] breached the standards of care in the following ways:
1. Failed to examine Mrs. Darden to confirm, diagnose and treat the source of her infection.
2. Failed to eliminate the source of Mrs. Darden's infection by not removing or cause to be removed the infected products of conception.
3. Failed to demand that Dr. McGhee attend and evaluate Mrs. Darden.
4. Failed to initiate a consult with another OB/GYN after 6:00 p.m. when he learned of the sonogram results showing fetal demise when it became apparent that Dr. McGhee was not going to timely attend and evaluate the patient.
5. Failed to timely attend and evaluate a patient demonstrating significant progression of her septic condition.
6. Failed to timely recognize and treat septic shock and complications of septic shock.
7. Failed to timely seek consultation in a patient demonstrating septic shock.
8. Allowed Mrs. Darden to be transferred to a lower level of nursing care in spite of her septic condition.

Coney's report named the individual physicians and stated what standard of care treating physicians should provide and how these treating physicians failed to provide that care. Because Coney offered a reasoned basis for his opinions as to the statutory elements, we reject appellant's arguments that the report is conclusory. *See Burrow v. Arce*, 997 S.W.2d 229, 236 (Tex. 1999) (opinion with reasoned basis is not conclusory).

Finally, appellants contend Coney's report failed to establish the alleged actions of appellants caused any injury to Darden. Coney opined, "Dr. Charva [sic]. . . [was] aware of Mrs. Darden's sepsis, knew that the source of the infection was the infected products of conception yet failed to immediately proceed with D and E, thus allowing the progression of her sepsis to septic shock." Later Coney states,

> It is my opinion, based on reasonable medical probability, that the above breaches in the standards of care by Dr. Boswell, Dr. Charva, [sic] Dr. McGhee and the hospital nursing personnel identified herein resulted in the infection that Mrs. Darden had in her uterus progressing from a localized infection to sepsis and then septic shock with multiple organ dysfunction, circulatory collapse, acute renal failure, adult respiratory failure, disseminated intravascular coagulation and thrombocytopenia. These breaches in the standards of care by Dr. Boswell, Dr. Charva, Dr. McGhee and the hospital nursing personnel identified herein led to the prolonged hospitalizations, sequalae and permanent injuries suffered by Mrs. Darden, which included but are not limited to, multiple organ dysfunction and failure.

Coney's report is specific in describing how the breach of standard of care by each physician caused Darden's ultimate condition.

An expert report does not need to contain all of the plaintiff's proof but it must do more than merely state the expert's conclusions. *Adeyemi,* 329 S.W.3d at 244. After a careful review of Coney's report, we conclude the trial court did not abuse its discretion in concluding the report sufficiently addressed the issues of the applicable standard of care, breach of the standard of care, and causation. We resolve appellants' second issue against them.

### III. Conclusion

Having resolved appellants' two issues against them, we affirm the trial court's order denying their second motion to dismiss the Darden's claims.[2]

/David Lewis/
DAVID LEWIS
JUSTICE

121380F.P05

---

[2] We note that in their appeal, appellants also challenged the Darden's expert report made by Dr. Carl A. Piel, D.O. on the grounds that Piel's report failed to establish the applicable causation. Because we have concluded that Coney's report is sufficient, it is unnecessary for us to address appellants' challenge to Piel's report.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RICARDO CHAVIRA, JR. M.D. AND
ROGER WARD BOSWELL, M.D.,
Appellants

No. 05-12-01380-CV      V.

LEZONIA AND ANTHONY DARDEN,
Appellees

On Appeal from the 298th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-10-14947.
Opinion delivered by Justice Lewis.
Justices FitzGerald and Francis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee LEZONIA AND ANTHONY DARDEN recover their
costs of this appeal from appellant RICARDO CHAVIRA, JR. M.D. AND ROGER WARD
BOSWELL, M.D.

Judgment entered this 10th day of June, 2013.

/David Lewis/
DAVID LEWIS
JUSTICE