ACCEPTED
06-15-00049-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
9/29/2015 3:52:22 PM
DEBBIE AUTREY
CLERK

NO. 06-15-00049-CV

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

9/30/2015 8:00:00 AM

DEBBIE AUTREY
Clerk

IN THE COURT OF APPEALS
FOR THE SIXTH DISTRICT OF TEXAS
TEXARKANA, TEXAS

CRISTINA MARENTE individually
and as representative of the
ESTATE OF CHRISTIAN MARENTE, Deceased,
*Appellants*

v.

EUNICE ASHA, and EPIC HEALTH SERVICES, INC.
*Appellees*

On Appeal from Cause Number 86812
From the 40th District Court of Ellis County, Texas

BRIEF FOR APPELLANT

ORAL ARGUMENT REQUESTED

Douglas T. Floyd
Attorney for Appellants
3336 Therondunn Dr.
Plano, Texas 75023
214-704-7081
469-519-9488 FAX
T.B.N. 07181700
lawyerfloyd@aol.com

**IDENTITY OF PARTIES AND COUNSEL**

PLAINTIFF/APPELLANT:   CRISTINA MARENTE individually and as representative of the ESTATE OF CHRISTIAN MARENTE, Deceased

DEFENDANTS/APPELLEES:      EUNICE ASHA, and EPIC HEALTH SERVICES, INC.

COUNSEL FOR PLAINTIFF/APPELLANT:
Douglas T. Floyd
3336 Therondunn Dr.
Plano, Texas 75023
214-704-7081
469-519-9488 FAX
T.B.N. 07181700
lawyerfloyd@aol.com

COUNSEL FOR EUNICE ASAH/APPELLEE
David M. Walsh, IV
Peter Anderson, Chamblee, Ryan, Kershaw and Anderson, P.C.
2777 N. Stemmons Freeway, Suite 1157
Dallas, Texas 75207
214-905-2003
214-905-1213 FAX
dmwalsh@chambleeryan.com

COUNSEL FOR EPIC HEALTH SERVICES, INC./APPELLEE
Winston L. Borum
BORUM & HANCOCK, L.L.P.
2485 Burnett Plaza
801 Cherry Street, Unit 414
Fort Worth, TX 76102
817-336-4100
817-336-41412 FAX
borum@borumhancock.com

PRESIDING JUDGE AT TRIAL:
Hon. Robert Carroll
40th District Court
Ellis County, Texas
201 Caroline, 11th Floor
Houston, Texas 77002
101 South Main Street
Waxahachie, Tx 75165
972-825-5060
972-825-5061 FAX

i

**TABLE OF CONTENTS**

IDENTITY OF THE PARTIES AND COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

A.      Dr. Marabel's report was sufficient to satisfy the requirements of TEX. CIV. PRAC. & REM. 74.351.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      a.      Dr. Marabel is fully qualified under TEX. CIV. PRAC. & REM. 74.401 to offer opinions in this case.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      b.      Dr. Marabel's report complies with the requirements of TEX. CIV. PRAC. & REM. §74.351(r)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

B.      Nurse Binghams' report was sufficient to satisfy the requirements of TEX. CIV. PRAC. & REM. 74.351.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      a.      Nurse Bingham is fully qualified under TEX. CIV. PRAC. & REM. 74.401 to offer opinions in this case.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      b.      Nurse Bingham's report complies with the requirements of TEX. CIV. PRAC. & REM. §74.351(r)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

C.      No expert report was necessary with respect to Appellants' claims for vicarious liability against Epic Health Services, Inc.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# INDEX OF AUTHORITIES

## CASES

*Adeyemi v.Guerrero*, 329 S.W.3d 241 (Tex. App.-Dallas 2010, no pet.). . . . . . . . . . . . . . . . . . . 9

*Ballan v. Gibson*, 151 S.W.3d 281 (Tex. App.—Dallas 2004, no pet.).. . . . . . . . . . . . . . . . . . . . 16

*Blan v. Ali*, 7 S.W.3d 741 (Tex. App.—Houston [14th Dist.] 1999, no pet.). . . . . . . . . . . . . . . 11

*American Transitional Care Centers of Texas, Inc. v. Palacios*, 46 S.W.3d 873
(Tex. 2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15
(Tex.App.-Tyler 2000, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Larson v. Downing*, 197 S.W.3d 303 (Tex. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Gray v. CHCA Bayshore, L.P.,* 189 S.W.3d 855
(Tex.App.-Houston [1st Dist.] 2006, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Group v. Vicento ,* 164 S.W.3rd 724 (Tex.App.-[Houston 14th Dist] 2005). . . . . . . . . . . . . 17, 18

*Obstetrical & Gynecological Assocs., P.A. v. McCoy*, 283 S.W.3d 96
(Tex. App.-Houston [14th Dist.] 2009, pet. denied).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Rittger v. Danos*, 332 S.W.3d 550
(Tex. App.—Houston [1st Dist.] 2009, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Scoresby v. Santillan*, 346 S.W.3d 546 (Tex. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Packard v. Guerra*, 252 S.W.3d 511 (Tex.App.-Houston [14 Dist.] 2008) . . . . . . . . . . . . . . . . 19

## STATUTES

Tex. Civ. Prac. & Rem. §74.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Tex. Civ. Prac. & Rem. Code Ann. § 74.351. . . . . . . . . . . . . . . . . . . . 2, 9, 11, 12 13, 16, 19

Tex. Civ. Prac. & Rem. § 74.351 (r)(5)(A)-(B).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Tex. Civ. Prac. & Rem.. §74.351(r)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 9, 11, 12, 13, 16, 19

Tex. Civ. Prac. & Rem.  § 74.401. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14, 19

Tex. Civ. Prac. & Rem. § 74.402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16, 17, 18, 19

Tex. Civ. Prac. & Rem. § 74.402(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 19

Tex. Civ. Prac. & Rem.  § 74.402(a)(2).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 19

TEX. GOV'T CODE ANN. § 311.005(13) (Vernon 2005). . . . . . . . . . . . . . . . . . . . . . . . . 18

**STATEMENT OF THE CASE**

This is a health case liability claim involving nursing negligence against Eunice Asah, R.N. (hereinafter referred to as "Nurse Asah"), and her employer, Epic Health Services, Inc., which was originally filed on March 4, 2013, in Ellis County, Texas, (CR 7) and subsequently amended on March 27, 2013. (CR 16). Patti Bingham, R.N. and Dr. Charles Marable, M.D. prepared initial expert reports which were subsequently amended and served on Defendants on August 29, 2013. (CR 197). On September 17, 2013, Epic Health Services filed Defendant Epic Health Service, Inc.'s Objection to Plaintiff's Amended Chapter 74 Expert Reports & Motion to Dismiss. (CR 199). On September 18, 2013, Asah filed Defendant Eunice Asah's Objections to Plaintiffs Amended Chapter 74 Expert Reports & Motion to Dismiss. (CR 219). On June 23, 2015, the District Court granted Defendants' motions to dismiss on all Plaintiffs' issues and signed an Order on Defendant Eunice Asah & Epic Health Services, Inc.'s Objections to Plaintiff's amended chapter 74 Expert Reports & Motions to Dismiss. (CR 379 ).

## ISSUES PRESENTED

1.     Were the expert amended reports provided to the Appellees in compliance with Tex. Civ. Prac. & Rem. 74.351(a)?

2.     Did the amended expert reports comply with the requirements of Tex. Civ. Prac. & Rem. 74.351(r)(6) and put the Appellees on notice of the conduct called into question?

3.     Did the district court err in dismissing the claims of vicarious liability against an employer of a health care provider on the basis of the expert reports?

# STATEMENT OF FACTS

On September 10, 2012, CHRISTIAN MARENTE, hereinafter Christian, was a seventeen-year-old male with a history of Jeune syndrome and restrictive lung disease. Jeune syndrome (asphyxiating thoracic dystrophy, ATD) is a rare autosomal recessive skeletal dysplasia [dysplasia is an abnormality within the cells of tissue that affects growth, development and function] characterized by a small, narrow chest and variable limb shortness. There is a considerable neonatal mortality as a result of respiratory distress. Renal, hepatic, pancreatic, and ocular complications may occur later in life. Christian had respiratory complications that had left him with a tracheostomy and mechanical-ventilator dependent. He had asthma and chronic kidney disease and had received a kidney transplant in July 2007. On September 10, 2012 CHRISTIAN was on oxygen 2 liters at all times. At night, he was on the ventilator; thus requiring 24 hour sitting provided by a home health service.

At approximately 5:00 p.m. on September 10, 2012, EUNICE ASAH, hereinafter Nurse Asah, a home health nurse provided by EPIC Health Services was bathing Christian in his home at 313 E. Freeman, Ennis, Texas. They were alone and while putting him "back to bed" the "tracheostomy" came out. As documented in the EMS Patient Care Report, Nurse Asah "made multiple attempts to place the trachea tube back into place but has been unsuccessful." Christian received Bag-Valve-Mask [BVM] ventilation and became pulseless. Nurse Asah began chest compressions. EMS was called and upon arrival continued Cardio- pulmonary resuscitation, obtained a blood pressure and then transported Christian to Children's Medical Center, Dallas, Texas for ongoing care. Christian had been pulseless approximately 10-15 minutes.

Nurse Asah initially stated she was "changing out his trach and the patient was moving around ... and it came out." Nurse Asah says she "made multiple attempts to place the trachea

3

tube back into place" but could not. According to the Discharge Summary from Children's Medical Center, she then tried to replace the trachea with a 5.5 trach tube, but was not successful. She then began bag-valve masking [BVM] Christian through his trachea in which she had told the 911 dispatcher the trach was "halfway in."

Nurse Asah spoke with the 911 dispatcher for a total of 6 minutes. During this time, she did not identify herself as a Registered Nurse. The 911 dispatcher wasted valuable time explaining to Nurse Asah how to complete the Cardio-pulmonary resuscitation [CPR] procedures.

EMS received the call at 17:23 and arrived at the home 17:28. Upon arrival, Christian did not have a pulse, and CPR was continued. EMS documented "Pt's trachea opening is blocked by the pt's neck." They noted inserting a "6.0mm ET tube through his trachea." They then transferred Christian to the airport where air-team emergency flight, Air Evac 74, met them and transferred Christian to Children's Medical Center in Dallas, Texas.

Christian was pronounced deceased on September 23, 2012.

Nurse Asah has reported at least two different reasons as to how the tracheostomy tube came out. Nurse Asah first reported in her 911 call that while putting Christian back to bed the tracheostomy came out. In response to interrogatories, Nurse Asah reported that she removed the tracheostomy in preparation to replacing the trach.

The first statement by Nurse Asah implies that the trach came out accidently. The second statement makes it clear that Nurse Asah removed the trach intentionally. What is important is that Cristina Marente was the only person that ever changed the tract and never changed the trach on Nurse Asah's shift. Nurse Asah try to ignore the fact that the replacing of the trach was not her responsibility and she should have never have undertaken the procedure of removing the

4

trach for the purpose of replacing the trach on the date in question. The removing and replacing of the trach in the home was the sole responsibility of the mother, Cristina Marente. Second, Nurse Asah ignores the fact that the removing and replacing of the trach was never done on her shift. It was always done on the following shift with another nurse present when Cristina Marente changed the trach.

As set forth in Appellants' First Amended Petition:(CR 18-19).

NEGLIGENCE - BREACH OF STANDARD OF CARE:

a. Among the Significant Breaches in Standard of Care by EPIC Health Services, Inc., and through its employee, EUNICE ASAH, RN:

i. ASAH's conduct fell below nursing Standard of Care when she failed to properly care for the trach.

ii. ASAH's conduct fell below nursing Standard of Care when she failed to immediately call appropriate emergency medical assistance when the patient showed initial signs of distress.

iii. ASAH's conduct fell below nursing Standard of Care when she failed to give the 911 dispatcher the correct street address of 311 East Freeman Street.

iv. ASAH's conduct fell below nursing Standard of Care when she failed to immediately identify herself as a registered nurse resulting in unnecessary delay.

v. ASAH's conduct fell below nursing Standard of Care when she failed to properly communicate with the 911 operator.

vi. ASAH's conduct fell below nursing Standard of Care when she failed to

5

remain calm and collected in a professional manner.

    vii.    ASAH's conduct fell below nursing Standard of Care when she failed to have the proper training for home health care for tracheostomy patients.

b.    To achieve positive outcomes in patients with trach tubes, every nurse needs to keep abreast of the best practices, develop, and maintain the necessary skills. A nurse who performs trach care needs to be familiar with their facility's policy and procedure. Per the Six-Step Decision-Making Model for Determining Nursing Scope of Practice in Texas, "A nurse always has a duty to his/her clients/patients to assure that they are safe. One of the most important actions a nurse can take toward that goal is making sure that he/she only accepts those assignments for which the nurse has the education, training, and skill competency. Physical and emotional ability can also impact a nurse's ability to maintain client safety when accepting an assignment."

c.    Plaintiffs assert that the care rendered to CHRISTIAN MARENTE by EPIC HOME SERVICES, INC., and EUNICE ASAH did not meet nursing Standard of Care. ASAH should have:

    i.    Properly maintained Christian's tracheostomy while transferring or changing the trach site.

    ii.    Immediately called Emergency personnel for additional help.

    iii.    Identify Registered Nurse qualifications to appropriate authorities to avoid unnecessary delay in additional assistance.

    iv.    Maintain a composed, professional conduct while under an emergency situation.

6

v.     Follow the American Heart Association's guidelines for Cardio-pulmonary resuscitation.

vi.    Instituted appropriate nursing interventions that required stabilization in a patient's condition.

vii.   Been properly trained in the care of a tracheostomy patient and in how to properly act in an emergency situation.

**SUMMARY OF THE ARGUMENT**

Nurse Bingham's amended expert report fulfills the requirement of Tex. Civ. Prac. & Rem. §74.351(r)(6). She fully discusses the standard of care, how the standard was breached by Nurse Asah, and how the breach led to Christian's injuries. Furthermore, the report is more than sufficient to inform the Nurse Asah of the conduct called into question and provides a basis for the trial court to conclude that the claims have merit.

Dr. Marable's amended expert report fulfills the requirements of TEX. CIV. PRAC. & REM. §74.351(r)(6). He fully discusses the standard of care, how the standard was breached by Nurse Asah, and how the breach led to Christian's injuries with respect to Nurse Asah's conduct. Furthermore, the report is more than sufficient to inform Nurse Asah of the conduct called into question and provides a basis for the trial court to conclude that the claims have merit.

No expert report was necessary with respect to Appellants' claims for vicarious liability against Epic Health Services. The court erred by dismissing those claims on the basis of Epic Health Services's objections to the expert report.

ARGUMENT

The issue in this Appeal is whether or not Nurse Bingham's amended expert report and Dr. Marable's amended expert report fulfills the requirement of Tex. Civ. Prac. & Rem. §74. The Courts have said, "In determining whether an expert is qualified, we must be careful not to draw expert qualifications "too narrowly." *Larson v. Downing*, 197 S.W.3d 303, 305 (Tex. 2006); *Adeyemi v.Guerrero*, 329 S.W.3d 241, 247 (Tex. App.-Dallas 2010, no pet.). Defendants attempt to frame the argument around the medical condition of Christian to avoid addressing the specific negligent acts of Nurse Asah that essentially have nothing to do with his medical condition and therefore ask the court to narrowly define the expert qualifications necessary to fulfill the requirements of Tex. Civ. Prac. & Rem. §74.

A health care liability claimant must timely provide each defendant healthcare provider with an expert report. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351; *Gray v. CHCA Bayshore, L.P.,* 189 S.W.3d 855, 858 (Tex.App.-Houston [1st Dist.] 2006, no pet.) The report must provide a "fair summary" of the expert's opinions as of the date of the report regarding the applicable standards of care, the manner in which the care rendered by the health care provider failed to meet the standard, and the causal relationship between that failure and the injury, harm, or damages claimed. Tex. Civ. Prac. & Rem. Code Ann. §74.351(r)(6).

If a defendant health care provider files a motion to dismiss, challenging the adequacy of a claimant's expert report, a trial court must grant the motion if it appears, after a hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report or is not sufficiently specific to provide a basis for the trial court to conclude that the claims have merit. *Id.* § 74.351(l); *Scoresby v. Santillan*, 346 S.W.3d 546, 555–56 (Tex. 2011). In setting out the expert's opinions, the report must provide enough information to fulfill two

9

purposes: (1) it must inform the defendant of the specific conduct that the plaintiff has called into question, and (2) it must provide a basis for the trial court to conclude that the claims have merit. *Scoresby*, 346 S.W.3d at 556.

We will address the qualifications and sufficiency of Dr. Marable's expert report first because essentially the same argument applies to the qualifications and sufficiency of Nurse Bingham's expert report.

<u>AS CONCERNS DR. MARABLE</u>

As stated above, Defendants attempt to frame the argument around the medical condition of Christian to avoid addressing the specific negligent acts of Nurse Asah that essentially have nothing to do with his medical condition, when Nurse Asah states:

"But the issue is not whether Nurse Asah is qualified to treat Christian in this setting, but whether *Dr. Marable* is qualified to offer opinions about a pediatric home health care nurse treating a patient such as Christian under these circumstances. And that is where Dr. Marable 's report fails. He does not state that he is familiar with the nursing standard of care applicable to nurses (1) caring for a pediatric patient with Jeune syndrome/restrictive lung disease; (2) with a tracheostomy requiring the administration of continuous oxygen therapy and nighttime ventilation with a mechanical ventilator; (3) in the home health care setting; and — most importantly -- (4) requiring tracheostomy tube changes, such as was performed by Nurse Asah in this case, or (5) responding to an emergency situation such as the one faced by Nurse Asah in this case." (CR 232)

The only real issue concerns number (5) above as to the appropriate response by Nurse Asah to the specific emergency situation she created made the basis of this suit.

Dr. Marable's report was sufficient to satisfy the requirements of Tex. Civ. Prac. & Rem.

74.351. Additionally, Dr. Marable is fully qualified under Tex. Civ. Prac. & Rem. 74.401 to offer opinions in this case.

Nurse Asah alleges that Dr. Marable was not qualified under Tex. Civ. Prac. & Rem. 74.401 to render an opinion as to the standard of care applicable to Nurse Asah in this case. (CR 233)

"The expert testifying in a medical malpractice case need not be a specialist in the particular branch of the profession for which testimony is offered; the statute setting out the requisite qualifications focuses not on the defendant doctor's area of expertise, but on the condition involved in the claim." *Rittger v. Danos*, 332 S.W.3d 550, 558 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (citing *Blan v. Ali*, 7 S.W.3d 741, 745 (Tex. App.—Houston [14th Dist.] 1999, no pet.)).

Dr. Marable is more than qualified to testify about the standard of care for a nurse like Nurse Asah performing the duties she was suppose to be performing at the time with Christian. Nurse Asah continues to focus her arguments on the medical condition of Christian and not on the extensive medical history of Dr. Marable in working with nurses.

The medical condition of the patient in this case is not the proper inquiry under Tex. Civ. Prac. & Rem. 74.401. Dr. Marable articulated very clearly in his expert report, both in the introduction (CR 253) and the section titled "QUALIFICATIONS" as to his experience as to the matters made the basis of this suit and with the Standard of Care" (CR 254-263) that he is familiar with the standard of care for a nurse watching a patient under the circumstances in this case and that Nurse Asah breached that standard of care.

Dr. Marable's report complies with the requirements of Tex. Civ. Prac. & Rem. §74.351(r)(6) with respect to all Appellees.

11

"An expert report must discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit." *American Transitional Care Centers of Texas, Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). Dr. Marable's report did exactly what the Supreme Court ruled it must in *Palacios*. In his report, Dr. Marable discussed, in detail, the standard of care, what specific conduct of each defendant breach said standard of care, and how that breach proximately caused Christian's injuries. The district court gave no reasoning for granting the motions to dismiss, but a dismissal for failure to comply with the requirements of Tex. Civ. Prac. & Rem. §74.351(r)(6) would constitute an abuse of discretion and cannot be upheld.

Tex. Civ. Prac. & Rem. §74.351(r)(6) requires only "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." A motion to dismiss should only be granted if "the report does not represent an objective good faith effort to comply with [that] definition." Tex. Civ. Prac. & Rem. §74.351(l).

Dr. Marable's report fulfills all three requirements of Tex. Civ. Prac. & Rem. §74.351(r)(6). He summarizes his opinions as to the applicable standards of care, the manner in which the care rendered by Nurse Asah failed to meet those standards, and the causal relationship between that failure and the injury, harm, or damages claimed. (CR 254-263)

In a lengthy paragraph in the standard of care section of his report, Dr. Marable explains, in detail, the causal link between Nurse Asah's actions and Christian's injury. (CR 256) He reiterates and elaborates upon several points in paragraphs in the breach of the standard of care

12

(CR 258-258) and causation (CR 262-263) sections of his report.

As required by Tex. Civ. Prac. & Rem. §74.351(r)(6) and Palacios, Dr. Marable's report informed Nurse Asah of the specific conduct called into question. Based on Christian's as created by Nurse Asah and the specific steps Nurse Asah should have taken specific identified actions set forth in his report. (CR 261-262)

### AS CONCERNS EPIC HEALTH SERVICES

Dr. Marable's report addresses Appellants' direct liability claims against Epic Health Services. As he did with conduct of Nurse Asah, he explained, in detail, how Epic Health Services caused Christian's injuries. Epic Health Services should have had protocols for evaluation, consultation, admission, and follow-up that resulted in adequate care of patients should an emergency condition arise. The failure to have in place and abide by such protocols was a breech in the standard of care." (CR 261-262)

"Epic Health Services' failed [sic] to have or implement adequate protocols for evaluation consultation, admission, and follow-up that resulted in adequate care of this patient with dural sinus thrombosis and idiopathic intracranial hypertension. The failure to have in place and abide by such protocols was a breech in the standard of care that was a proximate cause of Christian's death. (CR 262-263) The foregoing paragraphs in Dr. Marable's report are clearly sufficient to "inform the defendant of the specific conduct the plaintiff has called into question" and to "provide a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 879.

### AS CONCERNS NURSE BINGHAM

Nurse Bingham's report was sufficient to satisfy the requirements of Tex. Civ. Prac. & Rem. 74.351. The same argument for Dr. Marable applies to Nurse Bingham.

13

Nurse Bingham is fully qualified under Tex. Civ. Prac. & Rem. 74.401 to offer opinions in this case.

Nurse Asah's objection to Nurse Bingham's report because "Nurse Bingham's criticisms of Nurse Asah solely relate to her handling of the September 10, 2012 tracheostomy incident." (CR 227). That is absolutely correct, because that is the only time Nurse Asah negligently caused the trach to be removed and panicked when she could not put the trach back in. The care and treatment provided by Nurse Asah up until the incident was adequate because Nurse Asah never changed or removed the trach before the date in question.

Nurse Asah attempts to beguile the issues by concentrating on the medical condition of Christian and implying that only someone that has treated a patient with Jeune syndrome/restrictive lung disease in a home health care environment can give an opinion on the negligence of a nurse that negligently removes a trach and then panics when she cannot re-insert the trach. That is not a requirement to qualify as an expert under CPRC §74.402.

Nurse Bingham is certified and qualified as a registered nurse and is actively practicing health care in rendering health care services relevant to the claim. Nurse Asah's duties on the date in question were as a "sitter" that stayed with Christian and observed him. Her duties included washing and feeding Christian; monitoring the breathing equipment and periodically suctioning mucus out of his tracheostomy. Nurse Bingham has more qualifications and experience as a registered nurse than Nurse Asah and Nurse Bingham's qualifications and experience clearly show that she knows the standard of care in an emergency situation such as that created by Nurse Asah on September 10, 2012.

Nurse Bingham addressed the proper standard of care for a home health care nurse in her report. (CR 243)

14

1.      Monitor the vital signs of Christian per the Skilled Nursing Flowsheet daily;

2.      To annotate the Skilled Nursing Flowsheet daily;

3.      Monitor the ventilator equipment;

4.      Monitor the mucus build up in the trach and suction the mucus out periodically;

5.      Clean around the trach opening;

6.      Observe Christian for any signs of stress or difficulty breathing;

7.      Bath Christian as required.

Nurse Bingham stated in her report that Nurse Asah did breached the standard of care.

(CR 243-245)

"It is my opinion that on September 10, 2012, Nurse Asah breached the Standard of Care applicable to Eunice Asah, RN, as follows:

1.      Nurse Asah, RN breached the nursing Standard of Care when she removed the trach from Christian; a procedure that was not her responsibility.

2.      Nurse Asah, RN breached the nursing Standard of Care when she failed to immediately call appropriate emergency medical assistance when the patient showed initial signs of distress.

3.      Nurse Asah, RN breached the nursing Standard of Care when she failed to give the 911 dispatcher the correct street address of 311 East Freeman Street.

4.      Nurse Asah, RN breached the nursing Standard of Care when she failed to immediately identify herself as a registered nurse resulting in unnecessary delay.

5.      Nurse Asah, RN breached the nursing Standard of Care when she failed to properly communicate with the 911 operator.

6.      Nurse Asah, RN breached the nursing Standard of Care when she failed to remain calm and collected in a professional manner.

7.      Nurse Asah, RN breached the nursing Standard of Care when she failed to have the proper training for home health care for tracheostomy patients.

The expert report of Nurse Bingham clearly shows that she is a person qualified as an

expert witness to opine as to the standard of care against Nurse Asah, a health care provider in a health care liability lawsuit, because Nurse Bingham:

(1)     is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time of testimony is given or was practicing that type of health care at the time the claim arose;

(2)     has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury or condition involved in the claim; and

(3)     is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care. (CR 240)

Tex.Civ.Prac. & Rem. Code §74.402(b)

The expert report of Nurse Bingham clearly provides a "fair summary" of the expert's opinions as of the date of the report regarding: (1) the applicable standards of care, (2) the manner in which the care rendered by the physician or health care provider failed to meet the standards, and (3) the causal relationship between that failure and the injury, harm, or damages claimed. Tex. Civ. Prac. & Rem. Code § 74.351(r)(6); see also *Ballan v. Gibson*, 151 S.W.3d 281, 283 (Tex. App.—Dallas 2004, no pet.).

The heart of Nurse Asah's objections to Nurse Bingham is that she does not qualify as an expert under CPRC § 74.402 because the only person that can qualify is an expert is a  registered nurse sitting at the home of a juvenile patient with Jeune syndrome and restrictive lung disease that has a tracheostomy on September 10, 2012.  This is because Nurser Asah allege that the "field of practice" is a "registered nurse sitting at the home of a juvenile patient with Jeune

16

syndrome and restrictive lung disease that has a tracheostomy on September 10, 2012" and only a "registered nurse sitting at the home of a juvenile patient with Jeune syndrome and restrictive lung disease that has a tracheostomy on September 10, 2012" is the only *field of practice that involves the same type of care or treatment as that delivered* by Defendant Asah.

Plaintiffs' position is that the "field of practice" is that of a registered nurse in Texas for which Nurse Bingham is more than qualified to opine on.

Nurse Asah's position is an overly restrictive interpretation of CPRC § 74.402. The issue of an overly restrictive interpretation of CPRC § 74.402 was addressed in *Group v. Vicento*, 164 S.W.3rd 724 (Tex.App.-[Houston 14ᵗʰ Dist] 2005). *Group* involves the issue of a chiropractic standard of care. *Group* argued beginning at p. 730,

> "... under section 74.402(b)(1), to qualify as an expert witness on the issue of whether Group departed from accepted standards of care, Dr. Saqer must be "practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose. "TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b)(1). Group argues the term "practicing health care" as defined by subsection (a) *requires* a qualified expert in a chiropractic malpractice case to either be a chiropractor, train chiropractors at an accredited educational institution, or serve as a consulting health care provider to chiropractors and be licensed, certified, or registered as a chiropractor. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.402(a)(1), (2) ("For purposes of [section 74.402], 'practicing health care' *includes:* (1) training health care providers in the same field as the defendant health care provider at an accredited educational institution; or (2) serving as a consulting health care provider and being licensed, certified, or registered in the same field as the defendant health care provider.") (emphasis added). Group contends Dr. Saqer does not meet the statutory definition of "practicing health care." In response, Vicento argues Dr. Saqer's report demonstrates he has

> **Page 731**

> adequate knowledge, skill, experience, training, and education regarding his treatment of patients with conditions similar to Vicento's to qualify him as an expert under subsection (b)(1).
> Group's asserted construction of section 74.402, subsections (a)(1)-(2) and (b)(1), improperly limits and confines the definition of the term "practicing health care." Subsection (a) uses the term "includes" in defining "practicing health care." Although

17

Chapter 74 does not define the term "includes," the Code Construction Act defines "includes" as a term "of enlargement and not of limitation or exclusive enumeration, and use of [includes] does not create a presumption that components not expressed are excluded." TEX. GOV'T CODE ANN. § 311.005(13) (Vernon 2005); *see Jackson Law Office, P.C. v. Chappell,* 37 S.W.3d 15, 25-26 (Tex.App.-Tyler 2000, pet. denied). Thus, section 74.402(a)'s two definitions of "practicing health care" are not exclusive.
In addition, under the literal language of section 74.402(b)(1), an expert is only required to be "practicing health care *in a field of practice that involves the same type of care or treatment* as that delivered by the defendant health care provider." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.402(b)(1) (emphasis added). Subsection (b)(1) does not require an expert to be practicing health care *in the same field* as the defendant health care provider, here, the field of chiropractic. Instead, under subsection (b)(1), the expert only must practice health care in a field of practice *involving the same type of care or treatment.* [5]

Reading section 74.402 subsections (a) and (b)(1) together, subsection (a) expands upon the definition of "practicing health care" to *include* qualified teachers and consulting health care providers who may not otherwise be qualified under subsection (b)(1) because they are not *practicing* health care and instead teach or consult. Group's proffered construction of subsection (a) and (b)(1) results in a person being qualified as an expert *only if* the person trains health care providers *in the same field* as the defendant health care provider *or* if the person serves as a consulting health care provider and is licensed, certified, or registered in the same field as the defendant health care provider. According to Group, if a person practices health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, but the person is not certified in the same field of practice as the defendant

**Page 732**

health care provider, is not a teacher, or is not a qualified consultant, the person is unqualified.
*Group's* asserted construction of section 74.402(a) is unnecessarily restrictive and is contrary to the plain and common meaning of the language of the statute. Having considered the language of section 74.402 in its entirety, we disagree with Group that the two definitions of "practicing health care" under section 74.402(a) are exclusive."

As in *Group*, Plaintiff argues that CPRC § 74.402 is not to be interpreted so overly

restrictive as to disqualify Nurse Bingham simply because as Defendant Asah claims, she is not a

"registered nurse sitting at the home of a juvenile patient with Jeune syndrome and restrictive

lung disease that has a tracheostomy on September 10, 2012." *Group* clearly stands for the

proposition that CPRC § 74.402 is not to be interpreted so overly restrictive as requested by

18

Defendants.  Further more, *Group,* at 731 " (section 74.402(b)(1) does not require expert to be practicing in same field, only in field of practice involving same kind of care)."

As concerns the claim by Defendant Asah that Nurse Bingham (and Dr. Marable) relied on the statement of Cristina Marente that she was the only person that ever changed the trach of Christian Marente, and that the statement is somehow unreliable and irrelevant and that such statement under section 74.402(d) relates to the admission of testimony at trial, Plaintiff points to *Packard v. Guerra*, 252 S.W. 3d 511 (Tex.App.-Houston [14 Dist.] 2008) where the court stated at 530,

> "... the plain language of the Medical Liability Act does not limit the two sections to trial. To start narrowly, the headings of sections 74.401 and 74.402 are entitled, "Qualifications of an Expert Witness in Suit Against a [Physician/Health Care Provider]" ; they do not limit the sections to experts testifying at trial. Even more obviously, sections 74.401 (f) and 74.402 (f) discuss pre-trial objections to the qualifications of an expert witness, making it appear that the sections cover the whole spectrum of expert witnesses in a health care liability suit from pre-trial to trial. Another section in the Act also suggests a broader interpretation. Subsection 74.351(r)-which contains the definitions for section 74.351 , entitled "Expert Reports" -defines an expert who is qualified to give an expert report (pre-trial) as one who is qualified to testify under sections 74.401 and 74.402 . *See* TEX. CIV. PRAC. & REM. CODE § 74.351 (r)(5)(A)-(B).[15] It does not limit the qualifications to 74.401(a)-(c) and 74.402(a)-(c)-those sections referring specifically to physicians and health care providers. It includes all of sections 74.401 and 74.402 , including the exceptions contained in 74.401(d) and 74.402(d). Thus, an expert report, which is filed only 120 days after suit and will before trial, includes the report of an expert described in the "good cause" exception of sections 74.401 (d) and 74.402 (d). This plain language also does not seem to support a presumption that the good cause exceptions contained in sections 74.401 (d) and 74.402 (d) apply only at trial.

> And in *Packard* at p. 532 the Court clearly stated,

> "For these reasons, we hold that sections 74.401(d) and 74.402(d) are available for use at the expert report phase of a health care liability claim."

The exact meaning of Section 74.402(d) is a little more difficult to determine because Appellants found no cases on point:

> (d) The court shall apply the criteria specified in Subsections (a), (b), and © in determining whether an expert is qualified to offer expert testimony on the issue of

whether the defendant health care provider departed from accepted standards of health care but *may depart from those criteria if, under the circumstances, the court determines that there is good reason to admit the expert's testimony. The court shall state on the record the reason for admitting the testimony if the court departs from the criteria.*

Defendant Asah continues to assert that the only nurse that qualified to testify as an expert is one that has committed negligence by removing a trach without authority, authorization or reason and then failed in an attempt to inset the trach. Clearly, this is not what was intended by Medical Liability Act.

## NO EXPERT REPORT NECESSARY FOR VICARIOUS LIABILITY

## AGAINST EPIC HEALTH SERVICES

In addition to the direct liability claims Appellants asserted against Epic Health Services, Appellant also alleged that "Epic Health Services is vicariously liable for negligence of its nurses, technicians, servants and or agents who are its actual agents, apparent agents, ostensible agents, and agents by estoppel acts and/or omissions." With respect to Appellants' claims against Epic Health Services for vicarious liability for the conduct of Nurse Asah, Nurse Bingham and Dr. Marable's report was not required to address them. In fact, no expert report is needed at all for claims of vicarious liability based upon ostensible agency. *Obstetrical & Gynecological Assocs., P.A. v. McCoy*, 283 S.W.3d 96, 107 (Tex. App.-Houston [14th Dist.] 2009, pet. denied).

### PRAYER

For the foregoing reasons, Appellants respectfully requests this honorable court to reverse the judgment and remand this case to the district court for trial on the merits.

Respectfully submitted,

/S/ Douglas T. Floyd
COUNSEL FOR PLAINTIFFS/APPELLANTS

Douglas T. Floyd
3336 Therondunn Dr.
Plano, Texas 75023
214-704-7081
469-519-9488 FAX
T.B.N. 07181700
lawyerfloyd@aol.com

## CERTIFICATE OF SERVICE

I certify that a copy of this Brief for Appellant has been served upon the opposing counsel either by hand delivery, U.S. mail, or facsimile.

/S/ Douglas T. Floyd
**DOUGLAS T. FLOYD**

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(I) because it contains 3,587 words.

/S/ Douglas T. Floyd
**DOUGLAS T. FLOYD**